924 F.2d 138
 Steven A. STEWART, Appellant,
v.
Patrick McMANUS, Secretary of Corrections for State of
Kansas; Harold Farrier, Director of Iowa Department of
Corrections; Crispus Nix; Paul Hedgepeth; John Emmett;
Harry Grabowski; Robert Washington; James Burton; Don
Lynch; Louis Galloway; Lt. Kyle Bawden; and Charles
Harper, Appellees.
Iowa Department of Corrections; Paul Grossheim; John
Henry, Deputy Warden; and, Martha Van Baale,
Director of Nursing.
 No. 90-1075.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 13, 1990.
Decided Jan. 22, 1991.
 
 Mark D. Cleve, Davenport, Iowa, for appellant.
 Layne M. Lindebak, Des Moines, Iowa, for appellees.
 Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and MAGNUSON,* District Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Steven A. Stewart appeals from a judgment entered against him in his 42 U.S.C. Sec. 1983 (1988) action asserting claims based on his disciplinary treatment by Iowa correctional authorities. Stewart was convicted of murder in Kansas and served part of his prison term there, but was transferred to Iowa to complete his term there pursuant to the Interstate Corrections Compact adopted by Iowa and Kansas. While in the Iowa penitentiary, Stewart was charged with a number of violations of the Rules and Regulations governing the Iowa State Penitentiary and was disciplined according to the Iowa disciplinary rules and procedures. He then brought this action claiming that the Iowa correctional authorities violated the Interstate Compact Agreement, the implementing contract, and his due process and equal protection rights by applying Iowa, rather than Kansas, disciplinary rules. He also claimed that a violation of his eighth amendment rights occurred when he was "flex-cuffed" to the bars of his cell after a prison disturbance. The district court held that Iowa disciplinary rules governed Stewart's disciplinary actions in Iowa and also rejected his due process, equal protection and eighth amendment claims. On appeal, Stewart argues that the district court erred by: (1) ruling that Stewart's constitutional rights were not violated by the application of Iowa disciplinary rules; (2) holding that the Interstate Compact Agreement did not create a federal cause of action; and (3) rejecting his eighth amendment claim. We affirm the judgment of the district court.[1]
 
 
 2
 Stewart was convicted of murder in Kansas and incarcerated there from 1976 to January 7, 1983, when he was transferred to the Iowa State Penitentiary. While in the Kansas Penitentiary, Stewart pled guilty to an involuntary manslaughter charge arising from the death of a prison food service worker. At that time, he was removed from the general prison population and placed in segregation.
 
 
 3
 On January 7, 1983, Stewart was transferred to the Iowa State Penitentiary in Fort Madison, Iowa. The transfer was made pursuant to the Interstate Corrections Compact adopted by Iowa and Kansas and the contract between Kansas and Iowa implementing the Compact. After two months in close management status, Stewart was transferred to the general prison population.
 
 
 4
 Thereafter, Stewart compiled a lengthy disciplinary record. In late 1983, Stewart was sentenced to thirty days disciplinary detention and one year in administrative segregation for making a knife and threatening to kill officers and inmates. On June 18, 1985, Stewart was found guilty of threatening an officer and again placed in close management status. The warden also directed that Stewart be placed on no contact visits and that he be escorted in full restraints. About one year later, Stewart was suspected of starting a fire in his cell for the purpose of creating a disturbance. As a result, Stewart was removed from his cell and deprived of access to his legal work, some clothes and personal possessions for about ten days. On December 20, 1985, he was convicted of engaging in drug dealing within the penitentiary, and sentenced to fifteen days disciplinary detention and one year in administrative segregation.
 
 
 5
 On January 6, 1986, there was a "cell house disturbance" that included the taking of several hostages by inmates. After the correctional officials released the hostages, regained control of the cell house, and returned inmates to their cells, they handcuffed some of the inmates in their cells while they completed a "shakedown" of the cell house. During this time, Stewart was placed in plastic flex cuffs. Flex cuffs are a single band of plastic that is drawn tightly around the wrists. Correctional authorities used the plastic flex cuffs after running out of regular handcuffs. Stewart was found guilty of carrying a club outside the cell house during this incident and sentenced to 30 days in disciplinary detention and three years in administrative segregation.
 
 
 6
 In all of these disciplinary proceedings, Iowa correctional authorities applied the Rules, Regulations and Disciplinary Procedures of the Iowa State Penitentiary. Stewart filed this action claiming that the Interstate Corrections Compact and the implementing contract between Kansas and Iowa required that Iowa correctional officials apply Kansas disciplinary rules to his disciplinary proceedings. He claimed that the failure to do so violated his due process and equal protection rights and violated the Interstate Correctional Compact, which was transformed into federal law by congressional consent. He also contended that the correctional authorities' use of flex cuffs following the January 6, 1986, cell house disturbance violated his eighth amendment rights.
 
 
 7
 After a bench trial, the district court concluded that the Interstate Corrections Compact and implementing contract did not provide for the application of the sending state's laws to the receiving state's internal disciplinary proceedings. Stewart v. McManus, No. 86-185-A, slip op. at 6-7 (Nov. 8, 1989). The court further held that Iowa did not impose any discipline that was "qualitatively different from that authorized by the laws of Kansas," that the Iowa proceedings satisfied the requirements of procedural due process, and that the evidence did not establish that Stewart would have received less severe discipline if Kansas, rather than Iowa, rules had been applied in his disciplinary proceedings. Id. at 7-8. The court ruled that there were no equal protection or due process violations, id. at 10-11, and that the Interstate Corrections Compact and implementing contract could not be the basis for a 42 U.S.C. Sec. 1983 claim because it had not been transformed into federal law. Id. at 8. Finally, the district court ruled that defendants did not violate Stewart's eighth amendment rights by placing him in flex cuffs following the January 6, 1986, cell house disturbance. Stewart appealed.
 
 I.
 
 8
 Stewart sets forth three bases for his 42 U.S.C. Sec. 1983 claims. He argues that the application of Iowa, rather than Kansas, disciplinary rules violated his due process and equal protection rights, as well as federal rights arising under the Interstate Corrections Compact.[2] We address these arguments in turn.
 
 
 9
 Stewart argues that the Interstate Corrections Compact and the implementing contract between Kansas and Iowa created a fourteenth amendment liberty interest in having Kansas' prison disciplinary rules and regulations applied to him while he is incarcerated in Iowa.
 
 
 10
 A liberty interest is created by the presence of mandatory language limiting prison officials' discretion. Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); Hewitt v. Helms, 459 U.S. 460, 469-70, 103 S.Ct. 864, 870-71, 74 L.Ed.2d 675 (1983); Parker v. Corrothers, 750 F.2d 653, 656-57 (8th Cir.1984). Stewart contends that the Interstate Corrections Compact and implementing contract create a liberty interest by making the sending state's disciplinary rules applicable in proceedings involving a transferred inmate. He points to provisions in the Compact which, among other things, provide that a transferring prisoner remains "subject to the jurisdiction of the sending state" and is not deprived "of any legal rights which [he] would have had if confined in ... the sending state." Iowa Code Ann. Sec. 247.2 (West Supp.1990). He also cites to provisions in the Compact that allow the sending state to conduct hearings in the receiving state, provide for the application of the sending state's "governing law," and require that officials in the receiving state "act solely as agents of the sending state." Id. Stewart also refers to sections 2 and 16 of the implementing contract entered into by Kansas and Iowa. Section 2 states: "Except where expressly otherwise provided, the laws and administrative regulations and rules of the sending state shall govern in any matter relating to an inmate confined pursuant to this contract and the Interstate Corrections Compact." Section 16 provides: "Nothing contained herein shall be construed to authorize or permit the imposition of a type of discipline prohibited by the laws of the sending state."
 
 
 11
 We do not read the Interstate Corrections Compact or the implementing contract to require the application of Kansas disciplinary rules and regulations to a transferred prisoner. The Compact provides that all transferred prisoners "shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution." Iowa Code Ann. Sec. 247.2 (emphasis added). The contract also provides that the receiving state shall "supervise" the transferred inmates, "maintain proper discipline and control," and "make certain that they receive no special privileges." The sentence preceding section 16 of the contract cited above also provides guidance on disciplining transferred inmates: "The receiving state, as agent for the sending state, shall have physical control over and power to exercise disciplinary authority over all inmates from sending states." Finally, paragraph 17 of the contract provides that "[transferred] [i]nmates ... shall be subject to all provisions of law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed."
 
 
 12
 Although the Compact provides that the sending state has a right to conduct hearings in the receiving state and apply its law in situations when the inmate may be entitled to hearings by the law of its state, the Compact and the contract provide that inmates are to be "treated equally," and that disciplinary authority shall be exercised by the receiving state. Moreover, the contract provision prohibiting the receiving state from imposing a type of discipline prohibited by the laws of the sending state does not require that Iowa correctional authorities impose Kansas' disciplinary rules to violations of the Iowa penitentiary's disciplinary rules. We are satisfied that neither the statutory nor contractual provisions mandate that Kansas disciplinary rules and regulations be applied to Stewart's disciplinary proceedings in the Iowa penitentiary. Accordingly, the district court did not err in holding that Stewart had no fourteenth amendment liberty interest entitling him to the application of Kansas disciplinary rules to his disciplinary proceedings in the Iowa penitentiary.
 
 
 13
 Stewart also claims that the district court erred in ruling that the application of Iowa disciplinary rules did not violate his right to equal protection of the law. Stewart concedes that the district court properly applied the "rational basis" test in analyzing his equal protection claim. He argues, however, that the court erred in determining that the class in issue consisted of all inmates held in the physical custody of the Iowa State Penitentiary. He argues that the correct class to be considered is all Kansas inmates, and that all Kansas inmates must be treated similarly, whether they are in the physical custody of Kansas or Iowa.
 
 
 14
 This argument, however, directly contradicts the terms of the Compact, which requires that "[a]ll [transferred] inmates ... be treated equally with such similar inmates of the receiving state as may be confined in the same institution." Iowa Code Ann. Sec. 247.2. We conclude that the district court correctly analyzed Stewart's equal protection claim and concluded that Stewart's equal protection rights were not violated.[3] See Johnson v. Barry, 815 F.2d 1119, 1121 (7th Cir.1987) (applying disciplinary rules of transferee prison to transferred inmate did not violate inmate's equal protection rights).
 
 
 15
 Finally, Stewart claims that the application of Iowa disciplinary rules violated the Interstate Corrections Compact, and that this was a violation of federal law. He claims that the Interstate Corrections Compact became federal law under Cuyler v. Adams, 449 U.S. 433, 438-39, 101 S.Ct. 703, 706-07, 66 L.Ed.2d 641 (1981). In Cuyler, the Supreme Court analyzed the Compact Clause of the United States Constitution and provided guidance as to the types of agreements which violate that clause." The United States Constitution Compact Clause provides, in part:
 
 
 16
 No state shall, without the consent of Congress, ... enter into any Agreement or Compact with another State.
 
 
 17
 U.S. Const., Art. I, Sec. 10, Cl. 3.
 
 
 18
 An agreement between states, however, does not necessarily violate the Compact Clause. "[T]he consent of Congress transforms the States' agreement into federal law under the Compact Clause." Cuyler, 449 U.S. at 440, 101 S.Ct. at 707. "[W]here Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause." Id. at 440, 101 S.Ct. at 707.
 
 
 19
 Here, the district court concluded that the Interstate Corrections Compact was not transformed into federal law, and therefore, could not be a basis for Stewart's 42 U.S.C. Sec. 1983 claim. Slip op. at 8-9. The district court held that the Interstate Corrections Compact was neither an appropriate matter for federal legislation nor approved by Congress. Id. We agree with the reasoning of the district court that "no federal interest exists in the state's transfer of inmates so long as the states satisfy the constitutional requirements in the treatment of prisoners." Slip op. at 9. We also agree that no evidence exists that Congress has approved the Interstate Corrections Compact. Accordingly, we affirm the district court's ruling that the Interstate Corrections Compact has not been transformed into federal law, and therefore, cannot be a basis for Stewart's 42 U.S.C. Sec. 1983 claim.
 
 II.
 
 20
 Stewart next contends that the district court erred in finding that no eighth amendment violation occurred when Stewart was placed in flex cuffs following the January 6, 1986, cell house disturbance.
 
 
 21
 The district court rejected Stewart's eighth amendment claim on two grounds. First, the court concluded that correctional authorities used the flex cuffs in a good faith effort to restore discipline, Stewart v. McManus, slip op. at 12, and that such action is authorized under Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1084-85, 89 L.Ed.2d 251 (1986) (no eighth amendment violation if injury is caused in the course of a good faith effort to restore discipline). Second, the court concluded that Stewart did not suffer an injury, and therefore, no eighth amendment violation occurred. See Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir.1985) (injury was not sufficiently grave to implicate the eighth amendment).
 
 
 22
 Neither of these findings is clearly erroneous. There is no dispute that inmates had taken control of the cell house. There was testimony that after correctional prison authorities regained control, they had to restrain inmates in order to retrieve evidence, possible weapons, and the cell keys, and that they used the flex cuffs only after running out of ordinary handcuffs. There was also evidence that Stewart was flex cuffed in a good faith effort to restore discipline after a prison riot. The evidence also showed that Stewart's alleged wrist injury was slight. Stewart himself admitted that his wrist "don't [sic] hurt," and since the day of the incident, Stewart has not sought any medical treatment for his wrist. Accordingly, we conclude that the district court did not err in concluding that no violation of Stewart's eighth amendment rights occurred.
 
 
 23
 We affirm the judgment of the district court.
 
 
 
 *
 The HONORABLE PAUL A. MAGNUSON, United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa
 
 
 [2]
 In Cameron v. Mills, 645 F.Supp. 1119 (S.D.Iowa 1986), the district court granted a transferred inmate's motion for injunctive relief requiring defendants to apply Kansas regulations to his disciplinary hearings at the Iowa State Penitentiary. Id. at 1128. The court held that the inmate had a great enough probability of success on the merits to warrant a preliminary injunction. First, it held that the transferred inmate had a liberty interest in having his "home state's" disciplinary rules and sanctions applied in the Iowa Penitentiary disciplinary proceedings. Id. at 1126. Second, it held that the application of Iowa disciplinary rules violated the Interstate Corrections Compact, which had been transformed into federal law by congressional consent. Id
 The district court here rejected the reasoning in Cameron. It also noted decisions consistent with its own in Darnell v. Farrier, 86-366-B (S.D.Iowa June 2, 1986), and Stewart v. McManus, 647 F.Supp. 1024 (S.D.Iowa 1986), an earlier ruling in this case by the Honorable William C. Stuart, and asked that this court resolve the issues we now address. Slip op. at 10.
 
 
 [3]
 Stewart also argues that the district court erred in finding that Stewart would not have received less severe discipline if Kansas, rather than Iowa, rules and regulations had been applied in his disciplinary proceedings. In light of our holding that Stewart has no entitlement to the application of the Kansas disciplinary code to his disciplinary proceedings in Iowa, we need not address this argument