979 F.2d 855
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Scott Richard SEELYE, Plaintiff-Appellant,
v.
Stan STEPHENS, Governor; Chisholm Kurt; Jack MCcormick,
Warden, Montana State Prison, Defendants-Appellees.
 No. 91-35847.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 8, 1992.*
Decided Nov. 17, 1992.
 
 Before FERGUSON, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Seelye, an inmate at Montana State Prison, filed a complaint under 42 U.S.C. § 1983 alleging that prison officials violated his rights by opening certain items of his incoming mail outside his presence. The district court adopted the recommendation of the magistrate judge that the complaint be dismissed because none of the articles of mail about which Seelye complained was "privileged" according to the prison's Inmate Correspondence Policy, and thus did not need to be opened with Seelye at hand. Seelye argues, however, that since he is a Minnesota state prisoner who was transferred to the Montana State Prison under the Interstate Corrections Compact (the "Compact") he is entitled to all the protections afforded by Minnesota law. He claims that under applicable Minnesota law, prison officials may only open mail of the type in question in the presence of the prisoner to whom it is addressed.
 
 
 3
 Seelye brought this timely appeal to contest the district court's dismissal of his complaint on the grounds that he had failed to state a cognizable section 1983 claim. We have jurisdiction under 28 U.S.C. § 1291. We reverse.
 
 
 4
 * Dismissal for failure to state a claim is a ruling of law that we review de novo. Oscar v. University Students Co-operative Ass'n, 965 F.2d 783, 785 (9th Cir.1992) (en banc). In general, a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Buckey v. Los Angeles, 968 F.2d 791, 794 (9th Cir.1992).
 
 II
 
 5
 Seelye relies upon Article IV(e) of the Compact, which states:
 
 
 6
 All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state [i.e., Montana] as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state [i.e., Minnesota].
 
 
 7
 MCA 46-19-401, Article IV(e). We express no view as to whether Seelye is entitled by this provision to require Montana prison officials to abide by Minnesota law in handling his mail. Compare Pryor v. Brennan, 914 F.2d 921, 926 (7th Cir.1990) (District of Columbia prisoners transferred to state facilities under Compact were entitled by Article IV(e) to accumulate "good time credits" in accordance with District of Columbia rules), with Stewart v. McManus, 924 F.2d 138, 141 (8th Cir.1991) (neither the Compact nor contractual arrangements between the states mandated that Kansas disciplinary procedures be applied to transferred Kansas prisoner in Iowa prison). Similarly, we express no view as to whether a violation of rights made applicable by the terms of the Compact would, if found, be sufficient to support a cause of action under 42 U.S.C. § 1983. Compare Cameron v. Mills, 645 F.Supp. 1119, 1125 (S.D.Iowa 1986) (together, terms of Compact and contractual arrangements give transferred prisoner a liberty interest, cognizable under Fourteenth Amendment, in having sending state's disciplinary procedures applied while in receiving state's prison), with Stewart, 924 F.2d at 140-42 (overruling Cameron in holding that Compact creates no Fourteenth Amendment liberty interests, and further holding that Compact is not federal law such that violations thereof can support § 1983 action). We hold only that, having adopted the magistrate's recommendation of dismissal without considering these issues, and having suggested no other grounds for dismissal, the district court was necessarily prevented from finding "beyond doubt" that Seelye could "prove no set of facts in support of his claim which would entitle him to relief." The claim was therefore dismissed improperly.[1]
 
 
 8
 On remand the district court may need to address the following questions, which bear on whether Seelye has stated a claim under 42 U.S.C. § 1983: (1) Does the Compact, together with whatever contractual arrangements exist between Minnesota and Montana, give Seelye a protected liberty interest in having the "privileged" status of his correspondence determined under Minnesota law?[2] (2) Under the analysis of Cuyler v. Adams, 449 U.S. 433, 440 (1981), has the Compact between these two states been "transformed" into "federal" law? (3) Apart from the terms of the Compact, did the prison's handling of Seelye's mail violate his First Amendment rights to free expression, or his Fourteenth Amendment rights to due process and equal protection, as he alleges? See Sands v. Lewis, 886 F.2d 1166, 1172 (9th Cir.1989).
 
 III
 
 9
 Seelye has advised the court that all his personal property, including the documentation relevant to this action, was destroyed during a disturbance at the prison. He requests that a complete copy of the court file in this case be provided him. In view of our disposition of this appeal, we grant the request.
 
 IV
 
 10
 The order of dismissal is REVERSED and the case REMANDED for proceedings consistent with this disposition. The clerk is instructed to provide Seelye with a copy of the court file.
 
 FERGUSON, Circuit Judge, specially concurring:
 I.
 
 11
 I concur that the order of dismissal must be reversed and the case remanded for further proceedings. I write separately in order to permit the district court to focus more specifically on important issues raised in the case.
 
 
 12
 Section 1983 protects against violations of federal constitutional and statutory rights. 42 U.S.C. § 1983; Maine v. Thiboutot, 448 U.S. 1, 4 (1980). Apart from Seelye's § 1983 claims predicated on the First and Fourteenth Amendments themselves, his petition also fairly presents two § 1983 claims involving Montana's alleged violation of the ICC.[1] First, Seelye argues that the ICC itself has been transformed into a federal statute under Cuyler v. Adams, 449 U.S. 433, 440 (1981). Thus, Montana's breach of the ICC--i.e., its failure to grant Seelye the rights he would have enjoyed in Minnesota to have official mail opened in his presence--presents a violation of federal statutory law actionable under § 1983.
 
 
 13
 Second, Seelye argues that the ICC, coupled with the Minnesota statute, provides Seelye with a liberty interest protected by the Due Process Clause. Liberty interests may arise either from the Due Process Clause itself or from state law that places substantive limits on official discretion. See Mendoza v. Blodgett, 960 F.2d 1425, 1428 (9th Cir.1992). Seelye argues that the ICC falls into the latter category and that Montana, in denying him the protections of Minnesota law, has violated § 1983 by intentionally depriving him of his right to procedural due process.
 
 
 14
 In its discussion of those two ICC-related claims, the memorandum disposition places unwarranted reliance on Stewart v. McManus, 924 F.2d 138 (8th Cir.1991). First, Stewart's legal analysis on the issue of whether the ICC has been transformed into federal law under Cuyler is shallow and unpersuasive. Furthermore, Stewart is readily distinguishable from this case and thus is of scant assistance in resolving the two issues: (i) does the ICC require Montana prison officials to abide by Minnesota law in handling Seelye's mail? (ii) if the ICC so obligates Montana, and if Minnesota law protects Seelye, do these state laws provide Seelye with a liberty interest under the Due Process Clause? I believe that Stewart is largely irrelevant in in arriving at the answer to these two questions.
 
 II.
 
 15
 Seelye argues that the ICC is a federal law, violation of which gives rise to a cause of action under § 1983. The memorandum disposition sets forth no view as to whether or not the ICC has been transformed into federal law, and refers the district court to Stewart, which holds that the ICC has not been so transformed. Because the court in Stewart does not apply the analysis set forth in Cuyler v. Adams, 449 U.S. 433 (1980),[2] the district court need not consider that case persuasive. Rather, it should conduct its own analysis pursuant to the reasoning in Cuyler.
 
 
 16
 The Court in Cuyler set forth the standards by which we determine whether or not an agreement between states has been transformed into federal law. If an interstate agreement is subject to the Compact Clause of the United States Constitution, congressional consent to that agreement transforms it into federal law. Id. at 438. The Court noted that only those agreements which tend to increase the political power of the states or encroach on federal matters are subject to the Compact Clause. Id. If Congress has determined that an interstate agreement is a matter for federal concern, then it may consent either "by authorizing joint state action in advance or by giving express or implied approval to an agreement the States have already joined." Id.
 
 
 17
 In Cuyler, the Court found that Congress had consented in advance to the Interstate Agreement on Detainers, an interstate compact among the states and the District of Columbia which establishes procedures for transferring prisoners and ensuring them their speedy trial rights in receiving states. Id. at 435 n. 2. The Court determined that Congress' advance consent was manifest in its enactment of the Crime Control Consent Act of 1934, 4 U.S.C. § 112(a) ("Consent Act"), which provides:
 
 
 18
 The consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies....
 
 
 19
 The Court, looking to the legislative history of the Consent Act, found that its express purpose was to comply with the congressional consent requirement of the Compact Clause. Cuyler, 449 U.S. at 441 n. 9. In order to determine whether or not the Detainer Agreement fell within the scope of this authorization, the Court looked at the history of the Consent Act itself as well as statements by Congress when it adopted the Detainer Agreement for the District of Columbia. Id.
 
 
 20
 In the instant case the district court, when conducting its review of whether or not Congress consented in advance to the ICC by passing the Consent Act, should consider the plain language and legislative histories of both the Consent Act and the ICC. For example, as to whether or not the ICC encroaches on federal matters, the district court should consider that the ICC permits "any state party to this compact [to] accept federal aid for use in any institution or program, the use of which is or may be affected by this compact or any compact pursuant to this act ..." Mont.Code Ann. § 46-19-401, Article VI; D.C.Code Ann. § 24-905, Article VI. The district court should also investigate any other evidence of either express or implied consent by Congress, including the fact that the ICC has been adopted by Congress for the District of Columbia. See Cuyler, 449 U.S. at 441 n. 9 (interpreting Congressional statements of intent when adopting the Detainer Agreement for the District of Columbia as reaffirmation of Congress' consent to that agreement). It is possible that factors such as these could prove dispositive on the issue of whether or not the ICC has been transformed into federal law.
 
 III.
 
 21
 Seelye's second ICC-based claim turns on whether the ICC, in tandem with Minnesota law, creates a liberty interest under the Due Process Clause. The Supreme Court has explained that the determination of whether a state law creates a liberty interest in the prison setting does not turn on a "judgment as to what interests are more significant than others; rather, our method of inquiry in these cases always has been to examine closely the language of the relevant statutes and guidelines." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989).
 
 
 22
 In our examination of the regulatory language, the critical inquiry is a determination of whether the language has placed substantive limits on official discretion. Thompson, 490 U.S. at 462 (citation omitted). A state creates a liberty interest through a statute or regulation by establishing "substantive predicates" to govern its official decisionmaking. Id. The regulations must contain "explicit mandatory language" that specifically directs the decisionmaker to a particular outcome if he or she finds that the regulation's substantive predicates are present. Id., at 463.
 
 
 23
 Article IV(e) of Montana's version of the ICC states: "The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate sending state." Mont.Code Ann. § 46-19-401. This is specific, explicit, mandatory language that creates a liberty interest under the rubric of Thompson.
 
 
 24
 We have already treated Article IV of the ICC as a mandatory provision leaving no discretion with state decisionmakers. See Fest v. Bartee, 804 F.2d 559, 560 (9th Cir.1986); Pate v. Wilson, 348 F.2d 900, 901 (9th Cir.1965). The Seventh and Eighth Circuits, in the context of accumulation of good time credits, also read Article IV of the ICC as mandatory. See Pryor v. Brennan, 914 F.2d 921, 926 (7th Cir.1990); Hayes v. Lockhart, 754 F.2d 281, 284 (8th Cir.1985). Although these cases were not measuring the mandatory nature of Article IV of the ICC against the Thompson requirements, the analysis is directly applicable.
 
 
 25
 Stewart v. McManus, 924 F.2d 138 (8th Cir.1991), is not to the contrary. Stewart, a Kansas prisoner, was transferred to an Iowa prison under the ICC. He argued that disciplinary proceedings against him that were governed by Iowa law transgressed his liberty interest, created by Article IV of the ICC, in having his disciplinary proceedings governed by Kansas law. The Eighth Circuit construed the applicability of Article IV to disciplinary proceedings in light of the entire text of the ICC, as adopted by Iowa, and in light of the contract between Iowa and Kansas that implemented the ICC. The decision rested largely on the text of the implementing contract, which explicitly stated that "the receiving state ... shall have ... power to exercise disciplinary authority over all inmates from sending states." The court thus found that Stewart had no Fourteenth Amendment liberty interest arising from the ICC in the application of Kansas disciplinary rules. Stewart, 924 F.2d at 141. Given the virtually dispositive language of the implementing contract in Stewart, the reasoning of that court in no way undermines a determination that the ICC creates a liberty interest in the different factual context presented in this case.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 The concurring opinion suggests that we hereby place "unwarranted reliance" on the Eighth Circuit's opinion in Stewart. Concurring op. at 2. We do not. We place no reliance on that or any other case. We simply identify certain issues presented by Seelye's claim that at present preclude dismissal, expressing no opinion as to their merits, confident that the district court, when it turns its attention to these issues, will resolve them appropriately
 
 
 [2]
 The concurring opinion argues that this court "has already treated Article IV of the [Compact] as a mandatory provision leaving no discretion with state decisionmakers." Concurring op. at 6. We are forced to observe that in the cases cited in support of this proposition, this court held only that the provisions of the Compact which state that transferred prisoners remain subject to the jurisdiction of the sending state mandate that a federal court refuse to hear such a prisoner's habeas petition unless and until he has exhausted the remedies available in the sending state. Fest v. Bartee, 804 F.2d 559, 560 (9th Cir.1986); Pate v. Wilson, 348 F.2d 900, 901-02 (9th Cir.1965). We express no opinion as to whether these decisions are relevant to the issues the district court will consider on remand
 
 
 [1]
 This court has not addressed any claims that Seelye might pursue at the state level for Montana's violation of the ICC
 
 
 [2]
 The court in Stewart affirms a district court determination that the ICC has not been transformed into federal law according to Cuyler, but does not assess whether the district court properly applied the standards set forth in Cuyler for determining if a federal interest exists and if Congress has approved of an interstate agreement. Stewart, 924 F.2d at 142