Sheldon GLASSHOFER and
Kenneth Paul

v.

Richard THORNBURGH et al.

Civ. A. No. 79–1980.

United States District Court,
E. D. Pennsylvania.

May 22, 1981.

Carl A. Solano, Philadelphia, Pa., for plaintiffs.

Mark N. Cohen, Asst. Atty. Gen., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

Plaintiffs, two inmates of the State Correctional Institution at Graterford (Graterford), filed this action pursuant to 42 U.S.C. § 1983 against various employees and administrators of Graterford to redress alleged deprivations of their rights to free exercise of religion, equal protection of the laws, due process of law, and violations of their alleged rights under a state-created prisoner banquet program. Counsel for plaintiffs was appointed forthwith, and extensive settlement negotiations were conducted among the parties and counsel. Also I held numerous conferences in an effort to settle this action. Attempts at settlement having proven unsuccessful, plaintiffs filed an amended complaint. Subsequently the parties filed cross-motions for summary judgment, which are now before me. For the reasons set forth below, plaintiffs' motion will be denied and defendants' motion will be granted.

In count one of their amended complaint, plaintiffs allege that they lack a facility for the exclusive use by the Jewish community at Graterford for religious worship. Because the "inter-denomination chapel" is unsuited for Jewish religious functions and the room which has been set aside for those functions must be shared with other organizations at the institution, plaintiffs contend that their right freely to exercise their religion has been infringed upon. They contend further that, since other religious organizations at Graterford have separate facilities for their religious worship, failure to provide equivalent facilities to the Jewish inmates constitutes invidious discrimination. The second count of the amended complaint asserts that plaintiffs' first amendment rights have been violated because defendants have failed to provide them with a secure facility for religious worship, which has resulted in several instances of vandalism. Plaintiffs also allege that defendants' failure to increase security for their facility constitutes denial of equal protection because other religious groups at Graterford have been provided with secure facilities.

■ Accepting plaintiffs' allegations as true, defendants are nevertheless entitled to summary judgment as a matter of law in light of the uncontested facts before me. The Supreme Court has recently stated that "[t]here must be a 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" *Bell v. Wolfish*, 441 U.S. 520, 546, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979), *quoting Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). "[C]hallenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). In identifying these policies and goals, the Supreme Court stated that "central to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves." *Id.* at 823, 94 S.Ct. at 2804. It also listed deterrence,

rehabilitation, and "quarantining" offenders. *Id.* at 822–23, 94 S.Ct. at 2804. Nevertheless, "where a state does afford prison inmates the opportunity to practice religion, it may not, without reasonable justification, curtail the practice of religion by one sect." *O'Malley v. Brierley*, 477 F.2d 785, 795 (3d Cir. 1973). Defendants' actions and policies complained of in counts one and two cannot be viewed as violative of plaintiffs' First Amendment rights in light of the teachings of these cases. It is uncontested that the Jewish inmates have been given a conference room to use as their Synagogue in which they may participate in regularly scheduled services, that they are given priority in the use of the room for religious services, and that the room itself is to be used exclusively for religious activities or services. Further, it is uncontested that the room is to be locked when not in use, and that the only keys for the room are in the possession of Graterford's three chaplains. Thus defendants have clearly provided plaintiffs with an opportunity to practice their religion. The fact that the room in which their synagogue is located must be shared with other organizations is merely a function of space limitations at Graterford and the fact that the Jewish population is so small that the prison administration cannot justify setting a room aside for their exclusive use. There are a number of other religious organizations which also have a right to worship and hold religious functions, and defendants' attempt to accommodate them all by setting aside a room exclusively for religious functions of the various minority groups certainly constitutes reasonably justifiable "accommodation between institutional needs and objectives and the provisions of the Constitution." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Defendants' policies of giving the chaplains the only keys to the room, limiting its use to religious functions, and leaving it locked when not in use likewise strikes a proper balance between institutional needs and First Amendment dictates. Short of placing a guard in the room at all times, an action which the Constitution does not require in light of the above-cited cases, defendants can do no more to safeguard the security of the room and its contents. It is unfortunate that constitutionally mandated accommodation has resulted in some acts of vandalism, occasional delays while the key is sought, and occasional lapses in the room's security, but those instances do not themselves establish constitutional deprivations. *See Bell v. Wolfish*, 441 U.S. at 546, 99 S.Ct. at 1877; *Pell v. Procunier*, 417 U.S. at 822, 94 S.Ct. at 2804.

■ The matters raised in counts one and two also do not run afoul of plaintiffs' rights to equal protection of the laws. I note initially that plaintiffs' argument that they receive unequal treatment because the larger religious groups are given rooms for their exclusive use while the Jewish inmates are not is incorrect in light of the uncontested record. None of the Christian denominations at Graterford have rooms for their exclusive use; all protestants denominations as well as the Catholics must share an interdenominational chapel which contains non-removable religious artifacts, such as stations of the cross, which are antithetical to the teachings of some denominations. Further, numerous other religious groups, such as the Christian Scientists and the Hispanic Bible Group, lack their own facilities and must share their place of worship as do plaintiffs. The fact that the chapel and the mosque at Graterford are used only by Christians and Muslims respectively merely reflects the reality that these groups need more room more often than do the Jewish inmates and other smaller groups in light of their much greater numbers. "The desire that there be a maximum opportunity for the exercise of rights and privileges may often collide with the practical necessities of managing and administering a complicated penal community. The task of striking a proper balance between these conflicting interests is generally within the competence of the prison authorities." *Gittlemacker v. Prasse*, 428 F.2d 1, 4 (3d Cir. 1970). Just as the Third Circuit held in *Gittlemacker* that the small number of Jewish inmates at the State Cor-

rectional Institution at Dallas justified that institution's failure to employ a full-time Rabbi, *id.* at 5, so the small number of Jewish inmates at Graterford justifies defendants' policy of requiring them to share their place of worship with other religious groups. The Constitution does not require that each religious group be treated identically; good faith accommodation in light of practical considerations is all that is required. *Id.* I note further that there is nothing in the record to suggest that the mosque and the chapel at Graterford have been afforded greater security measures than has the Synagogue. For all of these reasons plaintiffs' equal protection claims stated in counts one and two must fail.

■ Count three alleges that defendants or persons under their control and supervision intentionally have detained or delayed members of the Jewish Chaplaincy and generally have harassed Jewish visitors. While plaintiffs have standing to challenge the detention of Jewish chaplains to the extent that those actions resulted in their being deprived of opportunities to engage in religious worship, *see Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72–81, 98 S.Ct. 2620, 2629–2634, 57 L.Ed.2d 595 (1978); *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 260–64, 97 S.Ct. 555, 560–62, 50 L.Ed.2d 450 (1977), they lack standing to challenge harassment of Jewish visitors in general because "a litigant may only assert his own constitutional rights and immunities." *United States v. Raines*, 362 U.S. 17, 22, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960); *O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973). Plaintiffs allege two instances in which Jewish chaplains were detained at the prison entrance by prison guards. The first resulted in a one and one-half hour delay, and the other in a one-half hour delay. Defendants do not dispute this, but present an affidavit of the prison guard involved stating that the delays were "due to the absence of a memo at the visitor's desk from the deputy superintendent for treatment specifying the person(s), time and purpose for the visit." That affidavit is uncontradicted. In light of the accommodation for prison security needs mandated by the Supreme Court in *Bell, Pell* and *Wolff,* those two brief delays occasioned by the need to obtain security clearances cannot be viewed as constitutional violations. Further, it is uncontradicted that defendants have issued an order to all guards that they "extend every courtesy and speed [in] the processing of Outside Guest Ministers into the institution." That this policy has been followed can be seen by the various letters in the record from Rabbi Joseph Rothstein, on behalf of the Jewish Chaplaincy Service of Greater Philadelphia, to Superintendent Cuyler expressing deep appreciation for the courtesies and cooperation extended to the Chaplaincy by the Graterford staff. Summary judgment in favor of defendants is thus appropriate on plaintiffs' allegations of detention of members of the Jewish Chaplaincy.

■ Plaintiffs also state that the absence of Jewish chaplains on the Graterford staff constitutes deprivations of their First Amendment rights. However, the Third Circuit has held that:

> The requirement that a state interpose no unreasonable barriers to the free exercise of an inmate's religion cannot be equated with the suggestion that the state has an affirmative duty to provide, furnish, or supply every inmate with a clergyman or religious services of his choice. It is one thing to provide facilities for worship and the opportunity for any clergy to visit the institution. This may be rationalized on the basis that since society has removed the prisoner from the community where he could freely exercise his religion, it has an obligation to furnish or supply him with the opportunity to practice his faith during confinement. Thus, the Free Exercise Clause is satisfied.

> But, to go further and suggest that the Free Exercise Clause demands that the state not only furnish the opportunity to practice, but also *supply* the clergyman, is a concept that dangerously approaches the jealously guarded frontiers of the Establishment Clause.

*Gittlemacker v. Prasse*, 428 F.2d at 4 (emphasis in original). Thus this argument must fail as well.

■ Finally, plaintiffs allege that the detention of members of the Jewish Chaplaincy constitutes violations of their rights to equal protection because clergymen of other religions are not similarly detained. However, defendants' exhibits show that all visiting clergymen are afforded similar treatment, and plaintiffs' exhibits do not refute this in any way. Thus summary judgment in favor of defendants is appropriate on the equal protection cause of action raised in count three. Fed.R.Civ.P. 56(e).

■■ In count four plaintiffs allege that defendants have interfered with the holding of religious services and functions by such actions as cutting short the duration of services and requiring passes for attendance. As a practical matter, plaintiffs here complain of one instance in which plaintiffs' Yom Kippur service was cut short in order to enable the prison guards to conduct the regular afternoon count, and two instances in which particular individuals were not permitted to leave their cell blocks to attend services because they did not have passes. Defendants do not deny that the 1979 Yom Kippur service was cut short, but present uncontradicted affidavits and exhibits which demonstrate that the daily 4:00 P.M. count is the only check which the prison makes during the daytime to ascertain that every inmate is present, that exceptions can be made for the count by obtaining prior approval from the "check officer" who can then cross reference empty cells with the list of those excused, and that the services in question were cut short in the absence of such prior approval in order to facilitate the count. In light of the need for accommodation to prison security discussed above and the obvious security need in having accurate information as to the whereabouts of all inmates, the curtailment of one Yom Kippur service under the above-described circumstances fails to state a claim upon which relief can be granted. In this regard I note also that the uncontradicted record shows that plaintiffs and oth-

er Jewish inmates have obtained permission to be absent from the count in order to attend religious functions on numerous subsequent occasions. Concerning the isolated instances in which individual prison guards required plaintiffs to present passes before leaving their cell blocks, the Third Circuit has stated that "first amendment values must give way to the reasonable considerations of prison management ... The deferential review required by the Supreme Court's decisions leaves no room for a requirement that prison officials choose the least restrictive regulation consistent with prison discipline." *St. Claire v. Cuyler*, 634 F.2d 109, 114 (3d Cir. 1980) (citations omitted). *See also Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 759 (3d Cir. 1979). Thus plaintiffs' First Amendment claim stated in this count must fail. Further, plaintiffs do not allege that passes are always required of Jewish inmates and never required of other inmates. Rather, they base their equal protection argument on bare allegations that non-Jewish inmates are permitted to attend religious services without passes, while Jewish inmates were prevented from doing so on a few occasions. This fails to state a claim upon which relief can be granted in light of the Supreme Court's statement that considerations of institutional security "are peculiarly within the province and professional expertise of corrections officials," and its holding that "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier*, 417 U.S. at 827, 94 S.Ct. at 2806.

■ Finally, plaintiffs contend in count five that they have been deprived of equal protection of the laws, of liberty without due process of law, and of their rights under an administrative regulation because they were denied permission to hold a banquet in 1979, and because certain restrictions were placed upon their banquet plans when they were permitted to hold a banquet in 1980. Plaintiffs base these

claims on an administrative memorandum issued by the Commissioner of the Pennsylvania Bureau of Corrections, which begins with the statement that "[i]t is the purpose of this Administrative Memorandum to provide general guidelines regarding approved inmate organization banquets/picnics which shall be applicable to all Bureau of Corrections Institutions." Thereafter the memorandum lists general guidelines regarding the manner in which banquets may be held once approved, and places certain restrictions on the initial approval of such functions. Nowhere does the memorandum confer the right to hold a banquet, nor does it identify the appropriate considerations for approval or disapproval of an application for a banquet. Thus this memorandum cannot be construed as creating a liberty interest in holding a banquet. *See generally Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Because plaintiffs concede in their memorandum in support of their motion that this claim "is based entirely on the administrative memorandum," and it is clear beyond peradventure that the constitution does not confer on prisoners the right to hold a banquet, plaintiffs' due process claims asserted in count five must fail for lack of an underlying liberty interest. *See Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In light of this determination, it is difficult to ascertain the basis for plaintiffs' equal protection argument. Nevertheless, assuming *arguendo* that plaintiffs are entitled to equal protection on this issue, it is clear that the holding of a banquet is not a fundamental interest. Thus the restrictions placed upon them would not violate equal protection guarantees if rationally related to legitimate governmental objectives. The restrictions of which plaintiffs complain, rejection of their banquet request in 1979, limitation of inmates attending to actual members of plaintiffs' religious organization, limitation of the number of non-inmates allowed to attend, and delays in processing guests into Graterford, are all rationally related to defendants' legitimate interests in maintaining prison discipline

and security. Indeed, some of the restrictions of which plaintiffs complain are specifically listed in the administrative memorandum as applicable to prisoner banquets. Thus plaintiffs' equal protection claim must fail as well. Absent a federal question on the banquet issue, plaintiff's nebulous pendent state claim concerning the banquet issue must also be dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

For all of these reasons, plaintiffs' motion for summary judgment will be denied and defendants' motion for summary judgment will be granted.