Allan F. **JABEN**, Plaintiff,

v.

Richard **MOORE** and Roger Endell, Defendants.

No. 88–3230–S.

United States District Court, D. Kansas.

March 18, 1992.

Allan F. Jaben, pro se.

Bryona J. Kincanon, Asst. Atty. Gen., Jefferson City, Mo., for Richard Moore.

Carol B. Bonebrake, Asst. Atty. Gen., Topeka, Kan., for Roger Endell.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on a pro se civil rights complaint filed pursuant to 42 U.S.C. § 1983. In 1978, plaintiff was convicted in Johnson County, Kansas, on charges of aggravated battery, attempted rape, rape, aggravated sodomy, and aggravated kidnapping, and is serving a controlling sentence of life imprisonment. In August 1984, plaintiff was transferred to the Missouri Department of Corrections pursuant to the Interstate Corrections Compact after an investigation of his involvement in an inmate work stoppage. In this action, plaintiff claims his constitutional rights have been violated as a result of the conditions of his confinement in Missouri. Plaintiff specifically claims (1) he has been deprived of access to Jewish religious services, (2) he has been deprived of access to Kansas legal materials, resulting in a denial of access to the courts, (3) his Missouri custody classification as a medium high security inmate is higher than his classification while incarcerated in Kansas and has deprived him of equal protection, (4) he will not be present at his initial parole hearing, (5) Missouri rehabilitation programs are not designed to facilitate a grant of parole, (6) he has been unable to seek reduction of his sentence, and (7) he has

been deprived of family visitation as a result of his transfer.

Having reviewed the record in this matter, the court makes the following findings and order.

### Discussion

Access to religious services

Plaintiff complains he was unable to participate in Jewish religious services upon his transfer to the Missouri Department of Corrections.

■ Correctional officers have a constitutional obligation only to provide inmates with an opportunity to exercise their religious freedom. In enunciating the appropriate standard, the United States Supreme Court was careful to note that correctional facilities need not provide identical opportunities for worship to all inmates:

> We do not suggest, of course, that every religious sect or group within a prison—however few in number—must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty.

*Cruz v. Beto*, 405 U.S. 319, 322, n. 2, 92 S.Ct. 1079, 1081, n. 2, 31 L.Ed.2d 263 (1972).

In considering similar claims by Jewish inmates, at least two courts have found constitutionally adequate provision for religious observance where facilities are available and clergy and lay leaders are permitted access to the facility. In *Garza v. Miller*, 688 F.2d 480 (7th Cir.1982), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983), the court found that in light of the small number of Jewish inmates in the federal penitentiary at Marion, Illinois, and the high security level of that institution, it was permissible to provide a rabbi, services, and other programs only upon request. Further, in *Glasshofer v. Thornburgh*, 514 F.Supp. 1242 (E.D.Pa. 1981), *aff'd*, 688 F.2d 821 (3d Cir.1982), the court granted summary judgment to corrections officials, finding no infringement where Jewish inmates had no exclusive area for worship and were served by visiting clergy. In reaching this conclusion, the *Glasshofer* court noted, "The Constitution does not require that each religious group be treated identically; good faith accommodation in light of practical considerations is all that is required." *Id.* at 1246, citing *Gittlemacker v. Prasse*, 428 F.2d 1 (3d Cir.1970).

■ A review of the record in this case demonstrates plaintiff was afforded the opportunity to practice his faith. Jaben was transferred in August 1988 to the Missouri Training Center for Men in Moberly, Missouri ("MTCM"). It is uncontested that very few inmates of the Jewish faith were housed in that facility at the time.

Plaintiff filed a grievance in November 1988 regarding the availability of Jewish services and was advised the All Faith Chapel was available to him. There is also evidence in the record that a rabbi conducted a ministerial visit at the request of another inmate in early December 1988.

The record demonstrates that at the time in question, the MTCM housed only three to four Jewish inmates. A rabbi was available upon request, and a chapel was also available. These opportunities, although limited, persuade the court that plaintiff had a constitutionally adequate accommodation for his religious needs. Plaintiff is not entitled to relief on this claim.

Access to the courts

Plaintiff next asserts he was not provided adequate access to Kansas legal materials, resulting in a denial of access to the courts.

■ It is, of course, well-established that inmates enjoy a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). The protection of this right obligates corrections officials to assure prisoners effective access to the courts by pro-

viding either adequate law libraries or the assistance of trained personnel in preparing and filing meaningful legal papers. *Id.* at 830, 97 S.Ct. at 1499. Where an inmate alleges he has been denied access to the courts, the burden is on corrections officials to show the inmate has received adequate access to legal research or assistance. *Id.* at 824, 97 S.Ct. at 1496.

In *Bounds,* the Supreme Court stated the inquiry of constitutional adequacy in this context requires an examination of a plan for access as a whole, *id.* at 832, 97 S.Ct. at 1500, and this court recognizes this "determination is fact-sensitive and for the district court to make in the first instance after evaluating the extent of personnel and facilities available." *Rich v. Zitnay,* 644 F.2d 41, 43 (1st Cir.1981).

■ It is uncontested that Jaben requested Kansas legal materials as early as June 15, 1988. (*Martinez* report, Ex. 2). This request sought all reports of the state appellate courts from 1972 on; state statutes and revisions from 1972 on; Kansas Shepard's Citations, a treatise covering state criminal practice and procedure and all revisions from 1972, and the Kansas state court rules. This request was forwarded to Kansas authorities by correspondence dated June 23, 1988, (*Martinez* report, Ex. 7). In a reply dated July 14, 1988, plaintiff received the following response:

> Please be advised that I have discussed your request with Mr. Linden Appel, Legal Counsel, Kansas State Penitentiary. It was the opinion of Mr. Appel, and I agree, that your request cannot be met in its entirety at this time. You are requesting several volumes of legal material, much of which would be irrelevant to your needs. Mr. Appel has, however, agreed to provide you with photo copied material of relevant statutes, etc. that pertain to your immediate need. To obtain this material, I suggest that you write Mr. Appel and explain to him specifically what your needs are. You may write to Mr. Appel at....

(*Martinez* report, Ex. 8). Jaben did not contact Appel in response to this offer, nor is there any record that he contacted the librarian at the Kansas State Penitentiary to request legal materials. Further, there is no record that plaintiff sought either representation or legal materials from Legal Services for Prisoners, Inc., a non-profit corporation providing legal assistance to Kansas state prisoners and having an office in the Kansas State Penitentiary. (*Martinez* report, Exs. 9–11).

Viewing the record in the light most favorable to plaintiff, the court finds he has failed to establish a claim for relief. Plaintiff does not dispute his failure to seek further assistance from Appel, and the court finds the response to plaintiff's request was a reasonable effort to clarify a request which was virtually a request for a personal library.

■ It is at best difficult on this record to evaluate the sufficiency of Kansas officials' proposal to permit plaintiff access to Kansas legal materials, and the court therefore expressly limits its finding on this issue to the situation presented here. The court holds only that where Kansas officials make a good faith offer to provide state legal materials where the inmate's need has been reasonably described and the inmate completely fails to respond, no claim of denial of access to the courts by the inmate is stated. Given the circumstances of this case, the court concludes plaintiff was not deprived of a right of access to the courts by Kansas authorities.

Missouri custody classification

■ Plaintiff next contends the transfer resulted in a denial of equal protection. In support, plaintiff states he was classified as medium custody by Kansas authorities prior to his segregation. Upon his transfer, plaintiff was classified under Missouri guidelines as high medium security. Missouri authorities reported this determination to Kansas authorities, and Kansas officials had no objection (*Martinez* report, Exs. 18–20).

After considering plaintiff's claim, the court must reject his argument. The court does not interpret the Interstate Corrections Compact to require the application of Kansas custody guidelines. First, the

Compact, as codified in the Kansas Statutes Annotated, provides that "All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be *treated equally with such similar inmates of the receiving state as may be confined in the same institution.* The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state." K.S.A. 76–3002, Art. IV, paragraph (e) (emphasis added).

Given that a primary purpose of the custody classification is a determination of the proper place of confinement, a common-sense reading of this provision must allow authorities having daily, physical custody of the transferred inmate to evaluate this aspect of his program. *Compare Stewart v. McManus,* 924 F.2d 138 (8th Cir.1991) (Interstate Corrections Compact did not require application of Kansas disciplinary rules to Kansas inmate transferred to Iowa).

■ Moreover, to the extent plaintiff might argue his Kansas custody classification is a legal right which survives an out-of-state transfer, Kansas law and regulations belie the creation of any liberty interest. A liberty interest in custody classification status arises only where state law or prison regulations use explicitly mandatory language in requiring prison administrators to use specific substantive procedures in setting or modifying an inmate's classification. *Hewitt v. Helms,* 459 U.S. 460, 470, 103 S.Ct. 864, 870, 74 L.Ed.2d 675 (1983). Pursuant to Kansas Administrative Regulation 44–5–104, an inmate's security classification is determined by reference to Internal Management Policy and Procedure ("IMPP") statements issued by the Secretary of the Kansas Department of Corrections. A review of IMPP 11–106, discussing case management and program agreements, reflects an explicit statement that the policy statement is intended only to provide directives and guidance to staff and inmates and is not intended to create a liberty interest in the classification process or to otherwise expand upon existing inmate rights secured by the Constitution. Having examined the state regulatory scheme, the court finds no such limits on official discretion as to create a protected liberty interest and concludes plaintiff had no right to be classified under Kansas guidelines following his transfer.

*Denial of presence at initial parole hearing*

■ Plaintiff next claims he will not be permitted to attend his initial parole hearing due to his transfer to Missouri. The court construes this claim as asserting a denial of equal protection. Having considered this argument, the court rejects plaintiff's position. First, K.A.R. 45–6–3 expressly provides for consideration of an out-of-state inmate by the Kansas parole board. That regulation provides:

45–6–3. **Absence of inmate at docketed hearing.** If an inmate is unable to appear for hearing by the board whenever scheduled due to [conditions including] in absentia status … the inmate's name shall nevertheless be submitted to the board in the same manner as all other eligible inmates. Unless otherwise ordered by the board, the inmate shall be brought before the board for hearing at the next regularly scheduled hearing at that institution after the inmate becomes available.

Accordingly, the court concludes plaintiff enjoys no right to be present at his initial hearing which would entitle him to relief.

In reaching this conclusion, the court recognizes the position set forth in *Bishop v. Moran,* 676 F.Supp. 416 (D.R.I.1987). In that case, the United States District Court for the District of Rhode Island concluded that prisoners who were involuntarily transferred from the state were entitled to be transported to the state at state expense for parole hearings. In departing from this position, this court notes first, the Kansas regulatory provision above, which contains a preference for personal involvement by inmates, and, second, the provisions of the Interstate Corrections Compact, as codified in Kansas Statutes Anno-

tated, which include an alternative which allows transferred inmates to personally appear at parole hearings conducted in the receiving state. K.S.A. 76–3002, Art. IV, paragraph (f) provides that any hearing to which an inmate transferred under the compact is entitled may be held before appropriate authorities either of the sending state or the receiving state, where authorized by the sending state. In such proceedings, the governing law is that of the sending state, and sending authorities determine the final result of the hearing. The court is persuaded these provisions strike a rational balance between the difficulties of transporting inmates from sometimes distant facilities and the desirable component of permitting inmates to personally participate in the parole consideration process identified by the *Bishop* court. Indeed, the court believes the process contemplated by the Compact provision may provide an alternative superior than a return to the sending state, as it permits an inmate to be evaluated in the first instance by authorities familiar with institutional conditions in the receiving state. The court does not find the treatment of transferred inmates to be substantially different under this scheme, and finds plaintiff is not entitled to relief.

Missouri rehabilitation programs

■ Plaintiff next asserts the programs available to him in Missouri do not prepare him for parole. The record reflects only that plaintiff has a work assignment and that Kansas authorities receive periodic progress reports. Despite this, the court finds no claim is stated. While there can be little doubt of the desirability of maintaining a meaningful schedule of programmed activity for inmates, the courts have never found a failure to provide rehabilitative programs to be objectionable on constitutional grounds. *See, e.g., Newman v. Alabama,* 559 F.2d 283, 291 (5th Cir. 1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); *Lovell v. Brennan,* 566 F.Supp. 672 (D.Me.1983), *aff'd,* 728 F.2d 560 (1st Cir.1984).

Ability to seek reduction in sentence

Plaintiff also contends his transfer has prevented him from seeking a reduction in his sentence through the Kansas Department of Corrections. This claim apparently refers to the mechanism provided by K.S.A. 21–4603(5), which allows a sentencing court to reduce a prisoner's sentence upon recommendation of the Department of Corrections. Plaintiff does not explain his claim that he is now precluded from this avenue of relief, and the court, having reviewed the statute, finds no support therein for this argument.

Impact of transfer on family visitation

■ Plaintiff's final claim is that his transfer to Missouri has made it difficult for his family to visit him. No claim of constitutional dimension is presented here. Plaintiff enjoys no constitutional right to be confined near his relatives or friends. *Kivela v. United States Attorney General,* 523 F.Supp. 1321 (S.D.N.Y.1981), *aff'd,* 688 F.2d 815 (2d Cir.1982).

*Conclusion*

After a thorough review of the plaintiff's complaint and the applicable legal standards, the court is convinced plaintiff has not stated a claim for which he is entitled to relief. While the conditions of his confinement outside the district of his conviction do not replicate those of his confinement in the Kansas prison system, the court finds no disparity of constitutional dimension.

IT IS THEREFORE ORDERED this action is hereby dismissed and all relief denied.