John CARILLO, Plaintiff,

v.

Larry DuBOIS, Defendant.

Civil Action No. 97–10468–RCL.

United States District Court,
D. Massachusetts.

Sept. 10, 1998.

John Carillo, South Walpole, MA, pro se.

Matthew C. Regan, III, Mass. Dept. of Corrections, Boston, MA, Virginia M. McGinn, Supreme Court of Rhode Island, Providence, RI, Richard B. Wooley, Assistant Attorney General, Providence, RI, for Larry DuBois and George Vose, Defendants.

1. On December 19, 1997, the court dismissed claims against George Vose, the Rhode Island director of corrections, on the ground that Carillo was not in the custody of the Rhode Island

*MEMORANDUM AND ORDER ON DE-FENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM*

LINDSAY, District Judge.

*Introduction*

The plaintiff, John Carillo, appearing *pro se*, is an individual who has been sentenced to a life term in a Rhode Island correctional facility. The defendant, Larry DuBois, is the commissioner of correction in Massachusetts, to whose custody Carillo has been committed pursuant to the New England Corrections Compact (the "Compact"). *See* M.G.L.A. § 125 App. §§ 1–2; R.I.G.L. § 13–11–2.[1] Carillo alleges that Dubois has deprived him of the rights to due process and to equal protection guaranteed by the Constitution of the United States, by imposing conditions of confinement different from those in Rhode Island and by confining Carillo to segregation without a hearing. Carillo brings this action pursuant to 42 U.S.C. § 1983 and asks this court to issue an injunction ordering his return to Rhode Island. DuBois has moved to dismiss Carillo's claims for failure to state a claim, on the sole theory that § 1983 does not provide a cause of action against DuBois in his official capacity. *See* FED. R.CIV.P. 12(b)(6). DuBois does not otherwise address Carillo's claims.

*Facts*

Carillo is serving a life sentence under the laws of Rhode Island for the murder of a correctional officer in 1973. On or about February 4, 1993, the Rhode Island Department of Corrections transferred Carillo to the Massachusetts Correctional Institute at Cedar Junction ("MCI–Cedar Junction"). For some period after his transfer to MCI–Cedar Junction, Carillo was in segregation; whether he remains so is not clear from the complaint.

In Rhode Island, a prisoner serving a life sentence for a crime committed before 1989 is statutorily eligible for parole after having served ten years of his sentence. *See*

Department of Correction. Those of Carillo's claims directed at Vose therefore are not discussed here.

R.I.G.L. § 13–8–13. Pursuant to the Compact, Carillo remains subject to the parole jurisdiction of Rhode Island. *See* M.G.L.A. § 125 App. §§ 1–2, Art. IV(c); R.I.G.L. § 13–11–2, Art. IV(c). In his complaint, Carillo alleges that a Rhode Island parole board has reviewed his parole status at least four times since his transfer to Massachusetts. In each instance, he claims, the parole board has refused to grant parole to him, and has conditioned parole, in part, on the successful completion by Carillo of at least six months in a minimum security facility.

According to Carillo, it is the policy of the Massachusetts Department of Correction to classify inmates serving life terms at a level of security no lower than medium security. Therefore, Carillo alleges, his ability to satisfy the parole conditions established by the Rhode Island parole board is foreclosed by his incarceration in Massachusetts.

*Discussion*

■ On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must take as true all well-pleaded factual allegations in the plaintiff's complaint. *See Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996). A motion to dismiss will be granted only when the facts alleged, if proven, would not justify recovery on any of the plaintiff's claims. *Id.* Because Carillo is proceeding *pro se,* the court must construe his pleadings liberally. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir.1997).

■ DuBois has moved to dismiss Carillo's claims on grounds that, under § 1983, a state official may not be sued for damages in his or her official capacity. DuBois is correct that § 1983 does not contemplate such relief. *See, e.g., Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that a suit for damages against a state officer in his or her official capacity is barred by the Eleventh Amendment) (citing *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); *Kentucky v. Graham,* 473 U.S. 159, 165–166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell v. Dep't of Social Services,* 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Therefore, to the extent that Carillo seeks damages against DuBois in his official capacity for alleged past violations, the motion to dismiss is ALLOWED.[2]

---

2. Carillo does not specify whether he is suing DuBois in his official or personal capacity. Carillo's complaint names DuBois as "the Commissioner of Correction for the Commonwealth of Massachusetts, who is responsible for the care ... of all prisoners in his custody and is also responsible for enforcing the law ... "

The First Circuit has not addressed the issue of how specifically a complaint must denote the capacity in which a defendant is sued. *See Pieve–Marin v. Combas–Sancho,* 967 F.Supp. 667, 670 (D.P.R.1997). *See also Kentucky v. Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099 ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed.") (quoting *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). Here, the description of DuBois provided by Carillo indicates that DuBois is named in his official capacity. *See Darul–Islam v. Dubois,* 997 F.Supp. 176, 178 (D.Mass.1998) (inferring suit in supervisory capacity from similar language in complaint); *Pieve–Marin,* 967 F.Supp. at 670 (cautioning that complaint, must, at a minimum, place defendant on notice of suit in personal capacity).

To the extent that Carillo may have intended to sue DuBois in his personal capacity, Carillo's procedural due process and Eighth Amendment claims fail to state a cause of action. Carillo does not specify whether he was placed in administrative or disciplinary segregation. Regardless, even confinement to punitive segregation does not trigger the protections of the due process clause, because neither form of confinement constitutes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Court of Appeals for the First Circuit has held that even very extended, indefinite segregation is not cruel and unusual punishment. *See Jackson v. Meachum,* 699 F.2d 578, 581 (1st Cir.1983). Moreover, Carillo alleges no personal involvement by DuBois in these alleged constitutional violations. That alone is fatal to his individual capacity claims. *See Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694 and n. 58, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Voutour v. Vitale,* 761 F.2d 812, 820 (1st Cir.1985) (requiring "affirmative link" between violation and conduct of the defendant).

■ Section 1983, however, does permit suit for prospective relief against DuBois in his official capacity. *See Will,* 491 U.S. at 71 n. 10, 109 S.Ct. 2304 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Graham,* 473 U.S. at 167 n. 14, 105 S.Ct. 3099). Thus, the court must inquire whether the various due process and equal protection violations Carillo alleges provide grounds for injunctive relief under § 1983.

To state a claim under § 1983, a plaintiff must allege that he was deprived by a person, acting under color of law, of a right, immunity, or privilege secured by the Constitution or laws of the United States. *See Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir. 1991) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

Carillo alleges that his ineligibility to be classified in the same manner as other Rhode Island prisoners violates his right to equal protection. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citing *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)). Some jurisdictions have held that, for equal protection purposes, inmates transferred pursuant to an interstate compact are "similarly situated" to those inmates in the receiving institution. *See Stewart v. McManus,* 924 F.2d 138, 142 (8th Cir.1991); *Tucker v. Angelone,* 954 F.Supp. 134, 136 (E.D.Va.1997). Indeed, here the Compact itself states that all inmates incarcerated pursuant to the Compact "shall be treated equally with such similar inmates of the receiving state as may be confined in the

same institution." M.G.L. c. 125 App. § 1–2 Art. IV(e); R.I.G.L. § 13–11–2, Art. IV(e). Common sense dictates, however, that Carillo cannot be "similarly situated," for purposes of parole, to inmates convicted under the laws of Massachusetts. Unlike Carillo, Massachusetts inmates are not subject to the parole jurisdiction of Rhode Island. Because inmates in one jurisdiction are subject to a different parole authority from inmates in the other jurisdiction, it is pointless, for equal protection purposes, to treat an inmate subject to the parole jurisdiction of Rhode Island as if he were subject to the jurisdiction of Massachusetts parole authorities.

An opinion of a court in the District of Rhode Island supports the notion that Carillo should not be compared to Massachusetts prisoners in this instance. In *Bishop v. Moran,* 676 F.Supp. 416, 420–21 (D.R.I.1987), the district court held that Rhode Island prisoners incarcerated out-of-state were similarly situated to other Rhode Island prisoners with regard to the right to attend parole hearings. Because Carillo remains subject to the parole jurisdiction of Rhode Island, the court concludes that, for purposes of parole consideration, he is similarly situated to those inmates convicted under the laws of Rhode Island and subject to its penal and parole authorities.

■ In order to justify the disparate treatment of similarly situated individuals, the state must demonstrate that the difference at issue "bears a rational relation to some legitimate end." *Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). Here, DuBois has offered no justification at all for the decision to deprive Carillo of the eligibility for minimum security to which Rhode Island inmates are entitled. For that reason, the court determines that Carillo has stated an equal protection claim, and the defendant's motion to dismiss this claim accordingly is DENIED.[3]

The court next addresses Carillo's due process claim. Liberty interests protected by the Fourteenth Amendment may arise from either the Due Process Clause itself or from

---

**3.** The court notes that it is possible that an equal protection claim also may lie against Vose. The parties may wish to address the appropriateness of such a claim in the additional briefing requested by the court. *See* Conclusion section of this memorandum and order.

the laws of the States. *See Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Carillo asserts that the Compact, as well as the Constitution, Rhode Island law, and various state consent decrees, give rise to a liberty interest in the rights he would have had if he had been incarcerated in Rhode Island.

■ As an initial matter, it is worth noting that the Constitution creates no liberty interest in imprisonment in any particular state and no liberty interest in particular prison privileges. *See Olim v. Wakinekona,* 461 U.S. 238, 245, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated ...."). Because Carillo has no constitutional right to remain imprisoned in Rhode Island, he has no inherent right to the privileges he alleges he would enjoy in Rhode Island. *See, e.g., Olim, supra* (finding no liberty interest in remaining in home state despite, *inter alia,* fact that inmate wished to continue in vocational training offered by home state institution); *Meachum,* 427 U.S. at 224, 96 S.Ct. 2532 (stating that, given a valid conviction, the state may confine him in any manner so long as the conditions of confinement do not otherwise violate the Constitution).

■ Similarly, the Constitution, *in se,* creates no right to receive parole. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 6, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is no constitutional or inher-

ent right of a convicted person to be conditionally released before the expiration of a valid sentence."). Finally, the Constitution does not entitle any inmate to a particular institutional classification, nor even to due process in the classification process. *See Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (even where denial of a classification inflicts a "grievous loss"); *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).

■ Because Carillo can point to no source of a liberty interest under the Constitution or other federal law, he must look to state law for a protectable interest. Rhode Island state law, in general, is not helpful to Carillo. Under Rhode Island law, Carillo has no liberty interest in a particular classification. *See Carillo v. Moran,* 1993 WL 389383 (D.R.I.1993) (Rhode Island scheme permits director of corrections to have unlimited discretion over classification decisions). Nor does Rhode Island law create any protectable expectation of parole. *See Lerner v. Gill,* 463 A.2d 1352, 1364 (R.I.1983).

■ Finding no liberty interest in parole created either by federal or state law generally, Carillo claims that he has acquired a liberty interest in his eligibility for minimum security, by operation of certain provisions of the Compact. *See* M.G.L.A. c. 125 App. § 1–2; R.I.G.L. § 13–11–12. Because the Compact purports to place Carillo, in a number of respects, in the situation that he would be in if incarcerated in Rhode Island, Carillo argues that his ineligibility for minimum security violates the Compact.[4]

4. Alternatively, Carillo also asserts that various court decisions regarding the Rhode Island corrections system give rise to a liberty interest in particular conditions of confinement. He argues that the Compact guarantees him the benefits established in the *"Morris* rules," which were formulated as the settlement of a class action, on behalf of Rhode Island prisoners, in which Carillo was a plaintiff. *See Morris v. Travisono,* 310 F.Supp. 857 (D.R.I.1970). The current text of the rules appears in *Morris v. Travisono,* 499 F.Supp. 149, 161–74 (D.R.I.1980) These rules and regulations first were embodied in a consent decree and apply to Rhode Island prisons. *See, e.g., Rodi v. Ventetuolo,* 941 F.2d 22, 23 (1st Cir.1991) (tracing history of the *Morris* rules). However, the *Morris* rules do not provide a basis

for an individual action seeking injunctive relief. *See (Martel v. Fridovich,* 14 F.3d 1, 3 n. 4 (1st Cir.1993)) (stating that inmates may not bring individual § 1983 actions for injunctive relief which are based on violation of a state consent decree).

Carillo also declares that he is entitled to reap the benefits of several decisions intended to redress apparent mistreatment of him arising from his status as a prisoner who had killed a correctional officer. *See Morris v. Travisono,* 549 F.Supp. 291 (D.R.I.1982) (ordering Carillo classified to lower security level); *Morris v. Travisono,* 499 F.Supp. 149 (D.R.I.1980) (ordering Rhode Island to "devise meaningful treatment and rehabilitation plan for Carillo," hold a reclassification hearing, and give him privileges of prisoner in

Article IV(e) of the Compact provides: "The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the same state." Article IV(h), guarantees that an inmate confined out-of-state pursuant to the Compact "shall have any and all rights to participate in and derive any benefits or incur or be relieved of any obligations or have such obligations modified or his status changed on account of any action or proceeding in which he could have participated if confined in any appropriate institution of the sending state located within such state."[5]

Despite its mandatory language, however, the Compact is not sufficient to create a liberty interest in those privileges Carillo would have enjoyed in Rhode Island. *See Sandin v. Conner*, 515 U.S. 472, 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (criticizing reliance on mandatory language as source of a liberty interest). To establish the existence of a liberty interest after *Sandin*, Carillo must demonstrate that his inability to be considered for a minimum security classification imposes on him an "atypical and significant hardship in relation to the ordinary incidents of prison life." *Id.* at 484, 115 S.Ct. 2293.

■■ For reasons explained as follows, the court concludes that Carillo has met the *San-*

*din* test for the existence of a liberty interest in his eligibility for a minimum security classification. In *Sandin*, the Supreme Court took pains to note that the disciplinary conviction at issue in that case bore only an "attenuated" relationship to the duration of the plaintiff's sentence. *See id.* at 487, 115 S.Ct. 2293. The Court pointed out that nothing in the state code at issue in *Sandin* required the parole board to deny parole in the face of a misconduct record. *Id.* There, the disciplinary record of the plaintiff was but one of a number of factors the parole board considered in deciding whether to grant or deny parole. However, unlike the plaintiff in *Sandin*, Carillo, according to the complaint (taken here as true) cannot achieve parole without first succeeding to a minimum security placement.[6] Unlike the disciplinary conviction in *Sandin*, Carillo's *per se* ineligibility for minimum security in Massachusetts is dispositive of his fate as to parole.[7] Although success in achieving the classification would not be sufficient to guarantee Carillo's release, minimum security is a necessary prerequisite for consideration for parole.

Because Carillo will not even be considered for parole without first attaining a minimum security classification, and because he would be eligible for such a classification in Rhode Island, the court finds that he has a liberty interest in eligibility for a minimum security placement under *Sandin*.[8] The court em-

---

his class); *aff'd* 707 F.2d 28 (1st Cir.1983). To the extent, if any, that Rhode Island has failed to comply with these orders by transferring Carillo, an action for contempt before the court that ordered relief would appear to be the appropriate vehicle for redress.

5. Two other provisions protect Rhode Island's jurisdiction over Carillo and parole determinations relating to him. Article IV(c) of the Compact provides that: "Inmates confined in an institution pursuant to the terms of this compact shall at all times be subject to the jurisdiction of the sending state...." Article IV(d) further mandates that: "Each receiving state shall provide regular reports to each sending state on the inmates of that sending state ... in order that each inmate may have official review of his or her record in determining and altering the disposition of said inmate in accordance with the law which may obtain in the sending state ..."

6. Carillo's description of the Rhode Island parole scheme comports with the account given in *Cugi-*

*ni v. Ventetuolo*, 781 F.Supp. 107, 108 (D.R.I. 1992).

7. By contrast, in one case that has reached the opposite result and held that the receiving state may assess inmates under its own parole eligibility criteria, a rehabilitation program denied the inmate did not have the same dispositive effect on the prisoner's chances of parole. *See Stewart v. Davies*, 954 F.2d 515, 516 (8th Cir.1992). *Jaben v. Moore*, 788 F.Supp. 500, 503 (D.Kan. 1992), holding that the receiving state may use its own classification guidelines, is silent on the effect of a higher classification on parole, if any.

8. The court notes that the Court of Appeals for the District of Columbia has questioned the applicability of *Sandin* to matters of parole. *See Ellis v. District of Columbia*, 84 F.3d 1413, 1418 (D.C.Cir.1996); *id.* at 1425 (Tatel, J. dissenting) (arguing that *Sandin* did not overrule earlier line of cases dealing with parole); *accord Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir.1995).

phasizes that it is the direct relationship of the minimum security classification to parole that creates a liberty interest for Carillo. *Cf. Knox v. Lanham*, 895 F.Supp. 750, 757 (D.Md.1995), *aff'd sub nom. Worsham v. Lanham*, 76 F.3d 377 (4th Cir.1996) (finding *ex post facto* violation where change in prison classification of "lifers" prevented participation in work release that was requirement for parole, and noting that "far from creating a speculative and attenuated risk," the change "directly impact[ed]" the inmate's actual chance of parole).

The next matter to be considered is the question of the relief to be accorded Carillo. One means of remedying Carillo's injury would be to have him returned to Rhode Island, where he might be considered for a minimum security placement by a classification board. Alternatively, Massachusetts could evaluate him for a minimum security classification and place him according to the results of that evaluation. The court recognizes, however, that sound policy reasons may underlie the decision of Massachusetts to isolate prisoners serving life sentences from the general population. For that reason, the court reserves judgment on the issue of the relief to be granted, and orders the parties to file further briefs on the issue of relief not later than September 25, 1998.

So ordered.